99 F.3d 1139
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ROBERTSON COUNTY SCHOOL SYSTEM, Plaintiff-Appellee,
v.
Patrick KING, Jr., et al., Defendants-Appellants.
 No. 95-5526.
 United States Court of Appeals, Sixth Circuit.
 Oct. 15, 1996.
 
 On Appeal from the United States District Court for the Middle District of Tennessee, No. 94-00483; Robert L. Echols, Judge.
 M.D.Tenn.
 REVERSED.
 Before: NELSON and MOORE, Circuit Judges, and CLELAND, District Judge.*
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 After conducting an evidentiary hearing under the statute now known as the "Individuals With Disabilities Education Act," or "IDEA," 20 U.S.C. §§ 1400 et seq., a Tennessee Department of Education administrative law judge found the Robertson County School System liable for costs that the parents of a handicapped child had incurred in sending the child to a private school. The school system sought federal judicial review of this decision. Upon consideration of the administrative record, and without hearing additional evidence, the district court found that the school system was not liable. A motion to award attorney fees to the parents was accordingly denied. The parents have appealed both branches of the district court's order.
 
 
 2
 For the reasons explained below, we conclude that the decision of the administrative law judge ought to have been upheld. We shall therefore reverse the district court's order as to liability for the private schooling costs and remand the case with instructions to reinstate the administrative decision and reconsider the motion for attorney fees pursuant to 20 U.S.C. § 1415(e)(4)(B).
 
 
 3
 * Patrick King, Jr., and his wife, Theresa King, have lived in Robertson County, Tennessee, at all times pertinent to this case. They are the parents of Patrick King, III, who was born on September 25, 1985.
 
 
 4
 At the age of two, young Patrick was sent to a hearing and speech center because of concerns that he might be deaf. The center found no hearing problem, but noted significant delay in his use of language. An evaluation by the Child Development Center of Vanderbilt University was recommended.
 
 
 5
 In a report issued on June 17, 1988, after tests on Patrick had been conducted in Robertson County for the convenience of the parents, the people at Vanderbilt concluded that the child suffered from a "Pervasive Development Disorder, not otherwise specified." (The author of the Vanderbilt report subsequently testified that this disorder is related to autism, "but it is a milder impairment than autism generally is.") The report recommended, among other things, a "special education classroom for 3 year olds," speech and language therapy, and reevaluation prior to kindergarten.
 
 
 6
 At the start of the school year in August of 1989, shortly before Patrick turned four, Mrs. King took copies of the Vanderbilt report to the office of the Robertson County School System's supervisor of special education. The supervisor himself, a Mr. Chapman, was not available, but Mrs. King subsequently testified that she explained to his secretary (who was given a copy of the Vanderbilt report) that Patrick needed special education placement and "needs it now." The secretary produced a list of three county schools with special education programs, and she advised Mrs. King to visit them.
 
 
 7
 On inspecting the schools later in the day, Mrs. King found that their students were significantly older than Patrick or had problems very different from his. None of the three schools, she concluded, would be appropriate for him.
 
 
 8
 Wishing to know if Robertson County had anything else for Patrick, according to her testimony, Mrs. King called Mr. Chapman's office when she returned home. Mr. Chapman was still not available. Although Mrs. King explained her purpose in calling and left her name and telephone number, her call was not returned.
 
 
 9
 A day or two later Mrs. King visited St. Bernard's School for Exceptional Children. The visit persuaded her that this school, a parochial institution, would be just what Patrick needed. She was concerned about its distance from her home, however, St. Bernard's being 25 miles away.
 
 
 10
 Mrs. King testified that she made several more calls to Mr. Chapman, and finally succeeded in talking to him about Patrick. Mr. Chapman told her that he had no records describing Patrick's handicap, and Mrs. King subsequently arranged to get him extra copies of the Vanderbilt report.
 
 
 11
 Mr. Chapman mentioned the preschool programs at two of the schools Mrs. King had visited, but he offered nothing else. Mrs. King had already enrolled Patrick at St. Bernard's by the time her first conversation with Mr. Chapman took place, but she would have preferred a placement closer to home if a suitable one could be found. The record does not disclose whether the enrollment at St. Bernard's could have been canceled without a penalty at this point.
 
 
 12
 Mr. Chapman told Mrs. King that Patrick needed, in her words, "to be tested with Robertson County." The district court found that Mrs. King refused to let the school system evaluate the boy, but this finding is not supported by the record. Mrs. King did say that she "questioned" what Mr. Chapman told her, because Patrick "had already been tested in Robertson County." Mrs. King also testified, however, that when Mr. Chapman told her again that Patrick had to be tested in Robertson County, "I said that's fine, let's get him tested again."
 
 
 13
 Mr. Chapman's testimony does not really contradict Mrs. King's. On the contrary, Mr. Chapman testified that after speaking with Mrs. King on the telephone, he called one of the Robertson County principals about Patrick's being evaluated. The principal responded that Patrick "is not even our student"--and at this juncture, it appears, the county simply dropped the matter of further testing. "I told [Mrs. King]," Mr. Chapman testified, "that, you know, I cannot provide a program for him because he is not our child."
 
 
 14
 In a subsequent telephone conversation with Mr. Chapman in the fall of 1989, the ALJ found, Mrs. King asked whether the county school system would pay for Patrick's attendance at St. Bernard's. "I told her no," Mr. Chapman testified. "It's an M Team[1] decision and it's not our child. It wouldn't be our responsibility to pay for it."
 
 
 15
 In December of 1991 Mrs. King was told by a neighbor who had a disabled child that the school system was supposed to pay for the schooling of handicapped children. (The ALJ found as a fact that this was the first Mrs. King had heard of the school system's having a legal obligation to pay.) The neighbor also told Mrs. King that an "M-Team meeting" should be convened. Mrs. King made such a request in February of 1992, and the school system honored the request. Mr. Chapman also gave Mr. and Mrs. King a booklet describing their rights under the Education Act. The ALJ found that this was the first time the school system had advised Patrick's parents of their statutory rights.
 
 
 16
 Robertson County began its evaluation of Patrick in March of 1991, when he was in his second year at St. Bernard's. The school psychologist who coordinated the evaluation assumed that the boy was the county's responsibility, since he lived there; "they're actually our student--our children," she testified, "even though they're a private school pupil."
 
 
 17
 Although the psychologist found that Patrick was a bright child, tests performed by a speech therapist disclosed that he was still "language impaired." The Kings asked Mr. Chapman if the county would have a "language impaired classroom" during the 1991-92 academic year. He replied that he would not know until August. St. Bernard's could not hold a place open for Patrick that long without payment of registration and tuition fees, and the parents decided to enroll him at St. Bernard's for a third year. Patrick entered the county system the year after that, and he has been enrolled there ever since.
 
 
 18
 In June of 1992 Mr. King sent the Robertson County School System a written request for reimbursement of certain of the tuition and transportation costs incurred in sending Patrick to St. Bernard's. The school system denied liability, and on October 28, 1993, the Kings requested an administrative "due process" hearing.
 
 
 19
 The hearing was held before Administrative Law Judge John W. Cleveland in February of 1994. Mr. Cleveland subsequently issued a detailed memorandum opinion and order finding that the school system had violated its statutory obligations and was obligated to pay expenses totalling $13,952.48. (The amount of the expenses incurred is not disputed here.)
 
 
 20
 Pursuant to 20 U.S.C. § 1415(e), the school system filed a federal district court complaint in which it asserted that the ALJ's determination as to liability was unsupported by the facts and the law. Mr. and Mrs. King filed an answer asserting the contrary. As the prevailing parties, the Kings also moved for an award of attorney fees. See 20 U.S.C. § 1415(e)(4)(B).
 
 
 21
 After reviewing the administrative record and the briefs of the parties, the district court reversed the decision of the administrative law judge. The motion for attorney fees was denied, the school system having become the prevailing party. This appeal followed.
 
 II
 
 22
 The stated purposes of the Individuals with Disabilities Education Act include the following: "to assure that all children with disabilities have available to them, within the time periods specified in section 1412(2)(B) of this title, a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of children with disabilities and their parents or guardians are protected...." 20 U.S.C. § 1400(c).
 
 
 23
 To qualify for federal funding under the Act (subject to exceptions not claimed to apply here), a state must develop a detailed plan assuring that a free appropriate public education will be available for all children with disabilities starting at age three. 20 U.S.C. § 1412(2)(B). And the statute imposes an affirmative duty on the state to assure that "all children residing in the State who are disabled ... and who are in need of special education and related services are identified, located, and evaluated...." 20 U.S.C. § 1412(2)(C). See Wise v. Ohio Dept. of Educ., 80 F.3d 177, 181 (6th Cir.1996) ("States are required to identify, locate, and evaluate 'all children residing in the State who are disabled....' ").
 
 
 24
 This affirmative duty to identify, locate and evaluate is not limited to children already enrolled in the public school system. Thus 34 C.F.R. § 300.220, which parrots the language of 20 U.S.C. § 1412(2)(C), explains in a "Note" that the local educational agency "is responsible for ensuring that all children with disabilities within its jurisdiction are identified, located, and evaluated, including children in all public and private agencies and institutions within that jurisdiction." (Emphasis supplied.)
 
 
 25
 Notwithstanding the qualifying phrase "within that jurisdiction," the rules set forth in Tennessee's own policies and procedures manual make it crystal clear that the duty of a local school system to locate, identify and evaluate potentially eligible children residing within the school system applies even to children enrolled in private schools outside the system. (This is significant because St. Bernard's, we are informed, was located outside Robertson County.) In the words of the manual,
 
 
 26
 "Each local school system is responsible for the identification, location and evaluation of every eligible child between the ages of birth and 22 who resides, or whose parents reside, within the school system, including the identification, location and evaluation of the following:
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 . eligible children or children suspected of being eligible whose parents reside within the school system but who are enrolled in a nonpublic or residential school or program located outside of the school system."
 
 
 30
 That the Robertson County School System had a duty to identify and evaluate Patrick as a child with disabilities who was eligible for a free appropriate public education seems clear. It seems equally clear that before the school system could refuse to initiate an evaluation or the provision of a free appropriate public education, it had a duty to give the child's parents a written notice fully informing them of their procedural rights. See 20 U.S.C. § 1415(C) and (D), as implemented in 34 C.F.R. §§ 300.504(a)(2) and 300.505. The school system violated both of these duties.
 
 
 31
 Mr. Cleveland, the Tennessee administrative law judge who heard the testimony in this matter, concluded that Mrs. King had "referred" Patrick to the Robertson County School System for an evaluation, or assessment, at the time she went to the office of the supervisor of special education in August of 1989. "Of course," ALJ Cleveland explained, "a parent who is a neophyte to special education and is unacquainted with IDEA cannot be expected to appear and say 'My child is eligible for special education services under IDEA, and I am here to refer my child for an individual assessment.' A request for assessment is implied when a parent informs a school that a child may have special needs." We agree.
 
 
 32
 Following the referral by Mrs. King, the ALJ continued, the supervisor should have established an M-Team and arranged for testing--and the M-Team should have recommended a placement within the 40-day period prescribed in the Tennessee procedures. We agree with these conclusions as well.
 
 
 33
 The district court disagreed, expressing itself as follows:
 
 
 34
 "It is axiomatic that a school system's obligation to provide free appropriate public education extends only to those students who are enrolled in that school system. Until the child is enrolled in the system, the system has no responsibility to evaluate or formulate a program for that student."
 
 
 35
 Among the authorities cited by the district court in support of these propositions was 34 C.F.R. § 300.403(a), which provides in pertinent part that "[i]f a child with a disability has [free appropriate public education] available and the parents choose to place the child in a private school or facility, the public agency is not required by this part to pay for the child's education at the private school or facility."
 
 
 36
 One of the problems with the district court's analysis, as we see it, is that Mr. and Mrs. King had not been informed, in August of 1989, of the school system's obligation to make a free public education available. Neither were they informed, as they should have been, of their procedural rights in this regard. If the parents had been properly advised and had chosen to keep Patrick at St. Bernard's anyway, the school system would obviously have had no obligation to pay--but the parents were not so advised.
 
 
 37
 As we have seen, moreover, it is simply not true that a public school system has no responsibility to evaluate students not enrolled in the system. The school system has an affirmative obligation to seek out and evaluate all potentially eligible children who live (or whose parents live) within the jurisdiction, regardless of whether such children are enrolled in private institutions within or without the jurisdiction.
 
 
 38
 This does not mean, of course, that the parents of a potentially eligible child can resort to self-help, with the hope of reimbursement, while denying the public school system a reasonable opportunity to evaluate the child and make an informed recommendation as to placement. See Ash v. Lake Oswego Sch. Dist., No. 7J, 980 F.2d 585, 589 (9th Cir.1992). But that is not what happened here.
 
 
 39
 The district court read Mrs. King's testimony as indicating that she refused to allow the Robertson County School System to evaluate Patrick in 1989. The ALJ did not so interpret the testimony, and neither do we. The district court erred, we believe, in failing to give "due weight" to the ALJ's interpretation of the evidence. See Doe v. Smith, 879 F.2d 1340, 1343 (6th Cir.1989), cert. denied, 493 U.S. 1025 (1990), and Roncker ex rel. Roncker v. Walter, 700 F.2d 1058, 1062 (6th Cir.), cert. denied, 464 U.S. 864 (1983) ("the district court should give due weight to the state administrative proceedings in reaching its decision").
 
 
 40
 Under the pertinent case law, including Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993), School Comm. of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359 (1985), and Hall by Hall v. Vance County Bd. of Educ., 774 F.2d 629 (4th Cir.1985), and largely for the reasons explained in the ALJ's memorandum opinion, we believe that Mr. and Mrs. King are entitled to reimbursement of their private schooling costs unless, as the school system contends, their claim has been barred by the applicable statute of limitations. To that issue--an issue not reached by the district court--we now turn.
 
 III
 
 41
 No limitations period is prescribed by the Education Act itself, so we must look to the most appropriate state statute of limitations. See Del-Costello v. International Brotherhood of Teamsters, 462 U.S. 151 (1983). In Tennessee, we have held, the pertinent statute is Tenn.Code Ann. § 28-3-105(3). See Janzen v. Knox County Bd. of Educ., 790 F.2d 484, 487-89 (6th Cir.1986). This statute provides that "[c]ivil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered ... when no other time of limitation is fixed by the statute creating such liability" must be commenced within three years from the accrual of the cause of action.
 
 
 42
 Citing Prescott v. Adams, 627 S.W.2d 682 (Tenn.Ct.App.1984), ALJ Cleveland observed that in Tennessee a cause of action accrues "when an injury occurs, is discovered, or in the exercise of reasonable diligence, should have been discovered." The school system does not challenge this proposition, nor does it challenge the proposition that the Kings' "action" was commenced on October 28, 1993. The only real dispute relates to the time when the Kings discovered, or in the exercise of reasonable diligence should have discovered, that they had suffered a legal injury.
 
 
 43
 The school system points to the fact that Mrs. King asked in the fall of 1989 whether Robertson County would pay for Patrick's schooling at St. Bernard's as evidence that she was aware of her rights at that time. The school system also points out that the Kings appear to have been in contact with people who could have advised them on this subject. There is no evidence that the Kings received such advice, however, and the answer that the school system gave to Mrs. King's question in 1989 was inaccurate and incomplete. The school system had an affirmative legal duty to inform the Kings of their rights, but it failed to carry out that duty--and it misinformed Mrs. King in telling her "it's not our child."
 
 
 44
 The ALJ found as a fact that the Kings did not become aware of their cause of action for reimbursement until December of 1991. That finding must be given due weight by the federal courts. We have tried to examine the record with some care, and, having done so, we are not persuaded that the ALJ erred in rejecting the statute of limitations defense.
 
 
 45
 The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable Robert J. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 IDEA-speak for "a multidisciplinary team or group of persons, including at least one teacher or other specialist with knowledge in the area of suspected disability." 34 C.F.R. § 300.532(e)