**Michael DOE, by and through his par-ents and next friends, Mr. and Mrs. Bill Doe, Plaintiffs–Appellants,**

v.

**METROPOLITAN NASHVILLE PUB-LIC SCHOOLS; Dr. Richard Benja-min, in his official capacity. Defen-dants–Appellees.**

No. 00–5027.

United States Court of Appeals,
Sixth Circuit.

May 16, 2001.

Before KEITH, BOGGS, and NORRIS, Circuit Judges.

## OPINION

PER CURIAM.

In this case arising under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 et seq., plaintiffs, Mr. and Mrs. Bill Doe, seek reimbursement for expenses they incurred when they placed their minor son, Michael, in the Grove School, a private school located in Connecticut that offers a curriculum designed to meet the needs of children with learning disabilities.

Upon remand from this court, *Doe v. Metropolitan Nashville Pub. Sch.*, 133 F.3d 384 (6th Cir.1998), the district court conducted a two-day bench trial. Thereafter, the trial court issued its Findings of Fact and Conclusions of Law, which affirmed an earlier decision of an administrative law judge granting judgment to defendants. Because we review the factual findings of the district court for clear error, *Tucker v. Calloway County Bd. of Educ.*, 136 F.3d 495, 503 (6th Cir.1998), the following synopsis is drawn primarily from its findings.

The parties agree that Michael Doe is learning disabled and emotionally disturbed. In 1992, when he was twelve years old, his parents elected to enroll him in the Grove School. Up to that point, Michael had never attended a Metro Nashville public school. Before sending Michael to Grove School, his parents neither informed Metro Nashville nor requested an evaluation of their son's learning problems. More than a year later, however, they asked for, and received, an M–Team evaluation, as defined by the IDEA. That process lasted approximately six months before, in April 1994. Metro Nashville certified Michael for special educational services and subsequently placed him in a local public school for that purpose.

One criticism leveled at Metro Nashville by Michael's parents concerns the alleged inadequacy of the school system's "child-find" plan, which the IDEA requires to ensure that students in need of special educational requirements are identified and serviced. 20 U.S.C. § 1412(a)(3). With respect to this contention, the district court found that Metro Nashville had "formulated specific goals and objectives to implement its 'child-find' program." Findings of Fact and Conclusions of Law, November 18, 1999 (hereafter "Opinion") at 3. The court observed that the plan

called for dissemination of informational material to all schools in the area, as well as to day care centers, nursery schools, hospitals, and medical personnel, such as psychologists and pediatricians, who would be likely to encounter children with special educational requirements. In addition. Metro Nashville made public service announcements through the local media, sent personnel to PTA meetings, and implemented an outreach program to low income communities. In fact, it appears that Michael's father received one such communication in the form of a Catalog of Community Services for Children.[1] Opinion at 4–6.

In addition to challenging the adequacy of the school system's child-find program, the Does also seek reimbursement for the costs incurred during the six to eight month period that Michael's application was being evaluated. The district court also made factual findings directed specifically to that issue. First, it noted that the Does made initial contact with Metro Nashville in October 1993 to request an M–Team meeting. In response, several meetings occurred, the first on November 15, 1993. Michael was certified as a qualifying student under the IDEA on April 27, 1994, and an individualized program for Michael was developed at the final meeting, which occurred on June 30. Opinion at 10–12. With respect to the delay, the district court observed.

> Dr. Thompson [the individual primarily responsible for making the evaluation] testified that there was never any indication from Dr. Doe that he wanted to move Michael to a different placement. "Dr. [Doe's] posture was he was placed there, he was going to stay there and he

was asking us to reimburse him for his costs."

> . . . .

> Dr. Thompson testified that the reasons for the delay in completing Michael's certification and IEP [individualized education plan] included Michael's being in Connecticut, the intervening holidays, and delays in getting requested information. The Does never complained about the length of time the process was taking or expressed any urgency about completing the process.

Opinion at 11–12 (citations to transcript omitted).

The "child-find" duty is not limited to children already enrolled in the public school system. *Robertson County Sch. Sys. v. King,* No. 95–5526, 1996 WL 593605, at *4 (6th Cir. Oct.15, 1996). The Code of Federal Regulations requires the school district to identify, locate, and evaluate "[a]ll children with disabilities residing in the State, including children with disabilities attending private schools." 34 C.F.R. § 300.125(a)(1)(i) (1999). Tennessee's policies and procedures manual directs local school systems to identify "all children suspected of being eligible who are not currently enrolled in the public school educational program and who meet the age requirements and reside in the school system." Special Education Programs. Tennessee Dep't of Education, *Administrative Policies and Procedures Manual* 19 (1989).

As already mentioned, Metro Nashville undertook a publicity campaign to alert parents to the options available for disabled children, and Metro provided information to Michael's former school

---

1. Although we place far less weight upon the extent of Dr. and Mrs. Doe's knowledge of the programs offered than did the district court, the record contains a substantial amount of evidence that the Does were, in fact, aware of the programs for disabled children offered by Metro Nashville. Opinion at 6–9.

(along with all other private schools in the district) about public school services. The Does contend, however, that Metro Nashville should have obtained an address list from their son's school to enable an individualized mailing to all students. Plaintiffs rely on *Robertson*, where the court found that the school system had a duty to evaluate a child, even though he was in a private school, when it was put on notice by a parent's request for special services for the child.

The district court rejected the Does' position in these terms:

> [N]othing in the IDEA, its implementing regulations, or the State guidelines ... require[s] Defendant to provide specific parents within its jurisdiction with specific procedural and substantive information concerning specific disabilities or needs, prior to any contact between that family and the school system. Although sufficiently serious procedural failures by the school district may require the district to reimburse parents after a unilateral placement (*see Doe*, 133 F.3d at 388), the Court finds no such procedural failures in this case.
>
> ....
>
> ... [T]he Court finds no "child-find" procedural failures by the Defendant and, therefore, denies reimbursement for the Does' unilateral placement at Grove School.

Opinion at 14–15 (footnote omitted).

We agree with the district court. *Robertson* is inapposite; in that case, the parent had notified the school by requesting special services for her child. Here, the Does do not claim that they notified the school district about Michael. Particularly in light of our standard of review of the district court's factual findings, there is no reason to question its conclusion that Metro Nashville's publicity campaign, which included a presentation at Michael's for-mer school and distribution of information to child specialists, including Michael's father, fulfilled the child-find duties. It would not be practical to require the school system to pursue individually private-school parents who have declined to act upon the information available to them from publicity campaigns done in compliance with the IDEA.

■ We turn next to the Does' claim that the district court erred in denying them reimbursement for Michael's educational expenses at Grove School while Metro Nashville conducted an evaluation of Michael.

Michael's evaluation took approximately six months. The inquiry into whether the Does are entitled to compensation for a dilatory evaluation revolves around the reasonableness of the public school's proceeding under the circumstances. As already noted, the district court cited the testimony of a Metro Nashville psychologist on Michael's M–Team who stated that the completion of Michael's certification was slowed by his location in Connecticut and by delays in obtaining requested information. Furthermore, Dr. Doe had indicated his intention to allow his son to complete the year at Grove School. Michael's M–Team met less than a month after the initial request and no one contests the correctness of the M–Team's evaluation of Michael's condition. Cases that have awarded private school tuition have generally based the decision on the school district's failure to propose an IEP, or an adequate IEP, upon request. *See, e.g., Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 160 (3d Cir.1994) (affirming award of reimbursement of private school tuition costs (minus room and board) for a year during the pendency of an administrative hearing on a child's placement because of "an appalling failure on the part

of the education bureaucracy to develop and implement an appropriate IEP" in the years of the child's public school education preceding the hearing).

Given the difficulties of evaluating a student enrolled out of state, we conclude that a slightly extended evaluation period was not unreasonable.

The judgment of the district court is affirmed.