**M.E. and P.E., on their behalf and on behalf of their son, C.E., Plaintiffs,**

v.

**The BOARD OF EDUCATION FOR BUNCOMBE COUNTY, a/k/a Buncombe County Public Schools, Defendant.**

**No. Civ 1:99CV3.**

United States District Court, W.D. North Carolina, Asheville Division.

Feb. 11, 2002.

Peter W.D. Wright, Deltaville, VA, for plaintiffs.

Cynthia S. Lopez, Christopher Z. Campbell, Roberts & Stevens, P.A., Asheville, NC, for defendant.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the remand from the United States Circuit Court of Appeals for the Fourth Circuit. *CM ex rel. JM v. Board of Educ. of Henderson County,* 241 F.3d 374 (4th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 48, 151 L.Ed.2d 18 (2001).

### I. PROCEDURAL HISTORY

ME and PE on behalf of CE, their autistic [1] child, initiated this action pursu-

---

1. For the purposes of the IDEA, autism is "a developmental disability significantly affecting verbal and nonverbal communication and social interaction, generally evident before age 3, that adversely affects a child's educational performance. Other characteristics often associated with autism are engagement

ant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400, *et seq.*, claiming the Buncombe County Board of Education (County) should reimburse them for the cost of private therapy for their child. 20 U.S.C. §§ 1401(a)(1)(A)(i) and 1401(a)(18). On October 10, 1998, Administrative Law Judge (ALJ) Beecher Gray found the Plaintiffs had failed to initiate a proceeding for a due process hearing within the 60–day statute of limitations prescribed by the North Carolina Administrative Procedure Act, N.C.Gen. Stat. § 150B–23. Plaintiffs filed an administrative appeal and State Review Officer (SRO) J. Sherwood Dunham affirmed the ALJ's decision on December 3, 1998. Having exhausted their administrative remedies, the parents brought this action pursuant to the IDEA. 20 U.S.C. § 1415(e)(2).

In December 1999, the undersigned found that Plaintiffs' suit was time-barred due to their failure to seek a due process hearing within the 60–day period. Plaintiffs appealed and the Fourth Circuit Court of Appeals found (1) the North Carolina statute of limitations provides the most analogous limitations period within which to request an IDEA due process hearing, affirming the trial court; (2) the 60–day limitation period mandated by the North Carolina legislature for requesting a due process hearing is not inconsistent with the federal policies contained in the IDEA, affirming the trial court; (3) the August 7, 1997, letter from the County did not sufficiently notify the parents of the commencement of the 60–day limitation period, reversing the trial court; and (4) the Plaintiffs' claim for reimbursement for the 1995–96 school year was not time-barred. *CM*, 241 F.3d at 388 (**"We reverse the district court's determination** that § 150B–23(f) bars M.E.'s claim ... with regard to the 1995–1996 school year, and we remand [the] case[ ] for further proceedings consistent with this opinion.").

## II. STANDARD OF REVIEW

■ The Supreme Court has held that a proper review of the state's determination in an IDEA action requires a twofold inquiry. *Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 201, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The district court must decide (1) whether the State complied with the IDEA's procedural requirements in developing and implementing the Individualized Education Program (IEP) for the child at issue and (2) whether the IEP is "reasonably calculated" to enable that child to receive educational benefits. *Id.*, at 206–07, 102 S.Ct. 3034. The Court also instructed reviewing courts to make "independent decision[s] based on a preponderance of the evidence." *Id.* The Fourth Circuit refined this standard in *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100 (4th Cir.1991), where it held that findings of fact by ALJ's and hearing officers in IDEA cases "are entitled to be considered *prima facie* correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it." *Id.*, at 105. In essence, district courts must "make an independent decision based on a preponderance of the evidence, while giving due weight to state administrative proceedings." *Board of Educ. of Montgomery County v. Brett Y*, 155 F.3d 557 (table), 1998 WL 390553 **5 (4th Cir.1998) (citations omitted). As to conclusions of law, the determinations made in the administrative proceedings

in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences." **34 C.F.R. § 300.7(c)(1)(i).**

are reviewed *de novo. Milford Sch. Dist. v. William F.*, 129 F.3d 1252 (table), 1997 WL 696108 (1st Cir.1997); *Dell v. Board of Educ. of Township High Sch. Dist. 113*, 32 F.3d 1053, 1058 (7th Cir.1994). The burden of proof, however, falls on the party challenging the administrative findings. *Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146, 152 (4th Cir.1991).

### III. FINDINGS OF FACT

In September 1992, CE was diagnosed with autism. **Letter dated July 29, 1997, *attached to* Exhibit 5, Petition for a Contested Case Hearing, *included in* Administrative Record.** In mid-December 1994, CE's parents began Lovaas [2] therapy in their home. *Id.* In early 1995, ME and PE decided to relocate from Maryland to North Carolina because of the TEACCH [3] program implemented through the State's public education system. *Id.* This would insure that if Lovaas therapy did not work for CE, he could be enrolled in a TEACCH program. *Id.* In August 1995, the Plaintiffs moved to Buncombe County, North Carolina. **Exhibit 7, Affidavit of Dr. Jane A. Stephens, *included in* Administrative Record.** However, CE was not enrolled in the County's preschool program because his parents had determined to continue CE's Lovaas therapy in their home. Although CE was enrolled in a private preschool during the fall of 1995, he did not attend preschool in the spring of 1996 because his social skills and ability to interact with the other children had not developed sufficiently to allow a meaningful experience. **Exhibit 6, Deposition of ME, *included in* Administrative Record, at 79–80 ("He was there, but he was not getting a whole lot from it because he**

had ... **he wasn't ready. He wasn't ready for socializing, for play, for interacting with others. He didn't know how to do it.").** Plaintiffs' first contact with the County occurred in March 1996 when PE wrote the County requesting funding for CE's Lovaas therapy. **Exhibit 7, *supra*; Exhibit 3, Petitioners' First Prehearing Statement, *included in* Administrative Record; Exhibit 5, Petition for a Contested Case Hearing, *supra*.** Dr. Stephens construed the letter as a referral for special education services and initiated the evaluation process, to which the Plaintiffs agreed. **Stephens Affidavit, at ¶ 3.**

On May 31, 1996, a meeting was held with the Plaintiffs at which the proposed IEP was reviewed. **Exhibit 4, Respondent's Prehearing Statement, *included in* Administrative Record, at 3.** The IEP proposed the placement of CE for 22 hours per week in a preschool classroom with no more than 12 children, 60 percent of whom were non-disabled and 40 percent of whom were disabled. **Stephens Affidavit, at ¶ 4.** The teachers included a TEACCH-trained special education teacher and a Headstart teacher. *Id.* Speech and occupational therapy were also to be provided. **Respondent's Prehearing Statement, *supra*.** The Plaintiffs rejected this placement and opted to continue the Lovaas program in their home. *Id.* ME felt the 22 hours of one-on-one instruction offered by the County was not sufficient compared to the 30 or 35 hours per week being implemented through Lovaas therapy. **ME Deposition, at 68.** Another reason she rejected the IEP was because the classroom had "a combination of special needs children and Head Start children who weren't necessar-

**2.** Applied behavioral analysis therapy is "a form of treatment for autistic preschoolers developed by Dr. Ivar Lovaas [which] consists of breaking down activities into discrete tasks and rewarding the child's accomplishments." *Jaynes v. Newport News Sch. Bd.*, 13 Fed.

Appx. 166, 170 n. 3, 2001 WL 788643 (4th Cir.2001).

**3.** Treatment and Education of Autistic and Related Communication Handicapped Children program.

ily special needs but low income, and they were in the class together." *Id.,* **at 69.** "I wanted him to be in a classroom with all supposedly normally developing children so that he could pick up appropriate behaviors and appropriate play habits and interacting." *Id.* "I didn't want to take the chance that he would pick up some behaviors, you know, and imitate them and regress somewhat." *Id.,* **at 69–70.** ME admitted that she would not have accepted any IEP which did not provide for Lovaas therapy. *Id.,* **at 75–76.** In response to an inquiry of whether she would have accepted any program offered by the County, ME testified that she would have accepted for them to provide the Lovaas program to C.E. for 30, 35 hours a week.

Q. If that had been proposed in a classroom, would you have accepted that?

A. You can't get 30, 35 hours of one-on-one in a classroom.

Q. Why not?

A. You mean you're talking about with other children?

Q. Yeah, with other children in a classroom.

A. They're in the classroom and he's going to sit with a teacher over here doing one-on-one while everybody is playing?

Q. Well, in some classroom setting in a school building.

A. In a school building? 30 to 35 hours they would be doing the Lovaas program in a school building with people who had been trained by Debbie Engerran or Lovaas, Debbie Engerran still being the consultant since the school personnel really didn't know, you know, the Lovaas program, with all of that into consideration?

Q. Okay. That's what you would have accepted.

A. Yes.

Q. How about if the school system had offered TEACCH therapy in your home?

A. For, what, 35 hours a week?

Q. Say a comparable number of hours, right.

A. Probably not. Because this program works for him. We're on track to go to regular kindergarten. Why am I going to change that and take the chance that he's going to regress and not make it to regular kindergarten and end up in a special ed class. And statistically, Lovaas looks a lot better. So why am I going to take the chance to not let him reach his full potential and be able to get to kindergarten? I can't do that.

Q. So, in other words, ... for you to have accepted it it would have to be Lovaas.

A. Yes.

*Id.* Moreover, Plaintiffs did not ask anyone at the Lovaas Institute to evaluate the proposed IEP. *Id.,* **at 73.**

In June 1996, the County offered to provide extended school year services to CE or to provide in-home services three times per week. **Respondent's Prehearing Statement, at 3.** These services were also rejected by the Plaintiffs because they did not want CE to be with other autistic children and wanted to continue Lovaas therapy. **ME Deposition, at 74; Petitioners' First Prehearing Statement.** Up to this point, Plaintiffs had rejected every offer of County educational services, having made the determination that no program which excluded Lovaas therapy was acceptable. However, in September 1996, the Plaintiffs elected to receive limited services in the form of one and a half hours of direct special education and

speech therapy. **Stephens Affidavit, at ¶ 7.** As a result, they agreed to and signed the IEP with the sole reservation being their right to seek reimbursement for Lovaas therapy. *Id.* During the 1996–97 school year, CE attended a private preschool with a Lovaas therapist acting as a "shadow" to prompt him to interact with the other children. **ME Deposition, at 79, 81–85.** During the fall, he attended three days per week for three hours each day. *Id.* In the spring semester, he attended daily for three hours. *Id.* His one-on-one Lovaas therapy was reduced to about 20 hours per week. *Id.*

In October 1996, the Plaintiffs again asked the County to consider funding the child's Lovaas therapy. **Petitioners' First Prehearing Statement.** An IEP meeting was held in early January 1997 at which time the parents presented a draft IEP prepared at the Lovaas institution. *Id.* At a meeting held on January 28, 1997, the County presented its IEP which provided 25 hours of preschool in the TEACCH setting with 40 percent disabled and 60 percent non-disabled students and offered speech and occupational therapy. **Respondent's Prehearing Statement, at 4.** The parents were asked to notify the County if the IEP was accepted because it would entail the hiring of additional staff. **Petitioners' First Prehearing Statement,** *supra.* Having received no response, in February 1997, the County's attorney wrote to the Plaintiffs and again asked them to respond if they wished to implement the IEP. *Id.* No response was received to this letter. Plaintiffs admit that the IEP was never implemented because they rejected it. *Id.* Among the reasons for rejection were that the IEP lacked sufficient evaluation procedures and schedules, required placement of CE in the existing TEACCH program, and did not consider the impact on CE of a change from Lovaas therapy to a TEACCH program. *Id.,* at 8. ME testified that the parents'

whole goal is to, you know, all along, was to get him to the point that he could go to a regular kindergarten. You know, if I can put him in a preschool, a regular . . . preschool instead of a special ed preschool and he can continue to . . . receive the Lovaas at home and have a Lovaas person with him every day while he's at that preschool, obviously I'm going to go for that rather than have him at a special ed preschool. Because that wasn't really working toward the goal of kindergarten because I was afraid he would regress in that class and we wouldn't get to that goal.

**ME Deposition, at 84.** Plaintiffs' objections to the proposed IEP were made despite the fact that they chose to move to North Carolina specifically for the availability of the TEACCH methodology.

In May 1997 the County sent the Plaintiffs an "Invitation to Conference" letter to discuss whether the child would be placed in kindergarten for the 1997–98 school year. **Stephens Affidavit, at ¶ 11.** The Plaintiffs attended the meeting and asked that the child's record be sealed and that he be declassified as a disabled student. *Id.;* **Respondent's Prehearing Statement,** *supra.* This prompted a re-evaluation of CE which disclosed he was no longer disabled. A follow-up meeting was set for June 1997 at which time it was determined CE no longer qualified for special education services and he was removed from the program. *Id.* On July 29, 1997, the Plaintiffs renewed their request for reimbursement for Lovaas therapy and threatened to initiate a due process petition in the event a response was not received within ten days. *Id.* Inexplicably, in describing the same program for which the Plaintiffs had relocated to the state, PE wrote

there is a risk one takes when one chooses to privately fund their child's

program and later seek reimbursement. The courts might conclude that the program offered by the school was appropriate and did provide the child with the opportunity to reach his full potential.... What if it doesn't cost Buncombe County anything to litigate these cases? What if TEACCH has agreed to fund the attorneys (sic) fees and costs in an effort to maintain its gravy train? ... We are asking that your client agree to reimburse [the Plaintiffs] in the amount of $37,804.12 [4] within ten days of the date you receive this letter in order to avoid a costly due process hearing on this matter.

**Letter dated July 29, 1997,** *attached to* **Exhibit 5, Petition for a Contested Case Hearing, at 6 (footnote added).** Attached to the letter was an accounting of the sums expended for CE's Lovaas therapy and for which reimbursement was sought. The request for reimbursement included the costs incurred for Lovaas therapy between the dates of March 1, 1996, the date on which the County was first contacted by the Plaintiffs, and June 13, 1997, at which time the Plaintiffs had determined that CE had "recovered" from autism. *Id.* Thus, no reimbursement for the time prior to March 1, 1996, was included in the total of $25,429.72. *Id.* By letter of August 7, 1997, the County declined to reimburse the Plaintiffs for the full amount demanded. **Respondent's Prehearing Statement,** *supra.*

CE entered regular kindergarten in the fall of 1997; however, his parents continued his Lovaas therapy 4 to 6 hours per week at home. **ME Deposition, at 86.** During the time that CE was in Lovaas therapy, he also took a variety of medications, including Prozac, which helped his attention span and ability to focus on learning. *Id.,* **93–94.** At the time of ME's deposition, CE had just entered the first grade; however, he continued to receive Lovaas therapy. *Id.,* **86–87.**

Ultimately, CE's parents requested a due process hearing which was held in September 1998. During that hearing, the County's attorney advised the ALJ that depositions had been taken of the Plaintiffs' expert witnesses, however, neither of the two experts had been shown the County's IEP or any other documentation from the County, such as the evaluation performed of CE. **Exhibit 11, Hearing Transcript,** *included in* **Administrative Record, at 30–31.** Moreover, during the depositions, neither expert could render an opinion as to the appropriateness of the County's IEP. *Id.* And, at the due process hearing, Plaintiffs failed to present any affidavits from their experts to the ALJ. *Id.,* **at 59.** On the other hand, the County's expert witness testified at her deposition that the IEP offered to CE was appropriate. *Id.,* **at 60–62.**

In ruling on the petition for a contested hearing, the ALJ wrote:

The [County] accepted P.E.'s letter of March 1, 1996 as a referral for special education and thereafter evaluated C.E., determined the extent of his eligibility for special services, developed numerous [IEPs] for C.E., and offered a placement that it felt was appropriate to meet C.E.'s special needs. Although the [Plaintiffs] allege that the [County] did not offer C.E. a [FAPE], they never instituted proceedings ... to challenge the educational program offered by the [County] during the time period that C.E. was eligible to receive services under IDEA.

CE's father. *Id.*

---

**4.** This figure included $25,429.72 for Lovaas therapy and $12,374.40 for attorney's fees for

At the time of this hearing on the [County's] *Motion*, neither expert witness for the [parents] had reviewed any of the proposed services offered by the [County], and the [parents] did not present additional affidavits at this hearing from these, or any other experts, opining that the program offered by the [County] was inappropriate for C.E.

At no time did the parents accept the placement offered by the [County] for C.E. electing to continue with their in-home Lovaas program. The [parents] never requested that the school system implement their program but only requested that the [County] "fund" the [parents'] program.

**Exhibit 1, Final Decision, *included in* Administrative Record, at 3.**

## IV. DISCUSSION

■ As noted *infra*, the Circuit ruled that the Plaintiffs' claim for reimbursement for the 1995–96 school year was not barred by the 60–day statute of limitation and it remanded this action for a determination of whether the Plaintiffs are entitled to reimbursement for that year. *C.M.*, 241 F.3d at 388. However, Plaintiffs have never sought reimbursement for the 1995–96 school year. Attached to their Petition for a Contested Case Hearing is the July 29, 1997, letter containing the itemization of costs expended for CE's Lovaas therapy and for which reimbursement was sought. The first date mentioned by the Plaintiffs' evidence is March 1996 when the school year was almost over. This accurately establishes that reimbursement is not at issue for that school year during which the child had not yet been evaluated by the County.[5] "[C]ourts have held uniformly that reimbursement is barred where parents unilaterally arrange

for private educational services without ever notifying the school board of their dissatisfaction with their child's EIP." *MC v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2nd Cir.2000). Thus, it is not surprising that in the proceedings before the ALJ and here, Plaintiffs did not seek reimbursement for expenses incurred prior to the time that they sought the involvement of the County. *Id.*, at 69 n. 9 (Noting that in 1997 Congress amended the IDEA to provide that the cost of reimbursement for private education services could be denied where the parents failed to raise the appropriateness of the IEP or took other unreasonable action.); *Doe v. Metropolitan Nashville Pub. Sch.*, 9 Fed.Appx. 453, 454, 456 (6th Cir.2001) ("In 1992, when [MD] was twelve years old, his parents elected to enroll him in the Grove School. Up to that point, [MD] had never attended a Metro Nashville Public School. Before sending [MD] to Grove School, his parents neither informed Metro Nashville nor requested an evaluation of their son's learning problems.... Cases that have awarded private school tuition have generally based the decision on the school district's failure to propose an IEP, or an adequate IEP, upon request." Reimbursement denied.); *Doe v. Anrig,* 692 F.2d 800 (1st Cir.1982), *overruled on other grounds, Doe v. Brookline Sch. Committee*, 722 F.2d 910 (1st Cir.1983) (There is no authority for the reimbursement of expenses incurred prior to a determination of the IEP for a child.). The Court therefore concludes that the Plaintiffs are not entitled to reimbursement for the cost of Lovaas therapy provided prior to March 1, 1996. This conclusion is further supported by the discussion below.

---

5. Likewise, Plaintiffs have never claimed that this is a "child find" case. **34 C.F.R.** § 300.125(a)(1)(i).

██ Likewise, it is not disputed that any reimbursement must be awarded for the period during which the child was, in fact, eligible for special education services, *i.e.*, prior to June 13, 1996, when the Plaintiffs conceded the child was no longer disabled.[6] "Reimbursement of special education expenses under IDEA is appropriate when the reviewing court finds that: (1) the public school's placement was not providing the child with a free appropriate public education; and (2) the parents' alternative placement was proper under IDEA." *Jaynes v. Newport News Sch. Bd.*, 2001 WL 788643, 13 Fed.Appx. 166, 172 (4th Cir.2001). In determining whether a FAPE has been provided, the Court should consider whether the state has complied with the IDEA's procedural requirements in developing and implementing the IEP and whether the IEP is "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 207, 102 S.Ct. 3034.

██ The Circuit has held that the County failed to provide due process notice to the Plaintiffs. The issue then is whether this procedural violation alone should entitle the Plaintiffs to reimbursement. The undersigned concludes that it does not. Plaintiffs did not receive a notice stating that their 60–day period within which to file for a due process hearing had begun to run as of a specific date. However, Plaintiffs have never contended they were not advised of their right to a contested hearing; their contention was that they were not advised of the date when the time to assert that right began to run. This procedural violation without more does not result in a duty for the County to reimburse the Plaintiffs for that school year. *Gadsby v. Grasmick*, 109 F.3d 940, 956 (4th Cir.1997); *Board of Educ. of Freder-*

*ick County, Md. v. JD, III*, 232 F.3d 886 (table), 2000 WL 1595710 (4th Cir.2000). In the absence of repeated violations of parents' procedural rights, a procedural deficiency must result in the loss of an educational opportunity for the child in order to warrant reimbursement. *See, e.g., Jaynes, supra; Tice v. Botetourt County Sch. Bd.*, 908 F.2d 1200 (4th Cir. 1990). Whether such a loss occurred will depend on whether a FAPE was offered to CE and, if not, whether the alternative placement of Lovaas therapy was proper under IDEA. *Jaynes*, 13 Fed.Appx. at 172, 2001 WL 788643.

In the complaint filed in this Court, Plaintiffs originally asserted a claim for reimbursement. **First Amended Complaint, filed February 2, 1999.** However, Plaintiffs later amended the complaint to seek a ruling that their request for due process was timely and the grant of a remand to the ALJ for a new trial. **Second Amended Complaint, filed September 16, 1999.** The County, however, moved for summary judgment based on those portions of the administrative record filed with this Court asking first, that the Plaintiffs' claim be deemed time-barred and second, that the action for reimbursement be dismissed in its entirety. **Memorandum in Support of Defendants' Motion for Summary Judgment, filed November 23, 1999.** In opposition to summary judgment, Plaintiffs presented no additional portions of the administrative record for review. Moreover, at the administrative level, *i.e.*, the due process hearing conducted in September 1998, the issues were not limited to the timeliness of the Plaintiffs' request for due process but extended to the issue of whether the IEP provided a FAPE to

---

**6.** Nor have they sought reimbursement for continued Lovaas therapy through his kinder- garten or first grade years.

CE. Thus, the undersigned is able to address the issue of a FAPE based on the IEPs proposed by the County and declines to remand the matter for additional state administrative proceedings. *Kirkpatrick v. Lenoir County Bd. of Educ.,* 216 F.3d 380, 387 (4th Cir.2000) (quoting *Tokarcik v. Forest Hills Sch. Dist.,* 665 F.2d 443, 451 (3rd Cir.1981) ("**[I]n providing for** *independent* **court review, Congress apparently intended to create an external check to guard against possible procedural deficiencies or institutional pressures inherent in the educational administrative system.** *Rather than* **affirming, reversing or** *remanding an agency decision, courts are required to decide upon an educational placement which conforms to their understanding of the aims and terms of the [IDEA].*") (emphasis added)); *Murray v. Montrose County Sch. Dist.,* 51 F.3d 921, 931 (10th Cir.1995) ("**[W]e are left with determining whether any genuine issues of material fact remained which precluded the grant of summary judgment on the record before the district court. The only disputed factual issue before the ALJ and the district court was whether [the County offered a FAPE]. That issue has been rendered moot by [the Plaintiffs' admission they would not have accepted the County's IEP in any event]. It would serve no purpose to remand this case for further proceedings directed to resolving that issue ....**").

 At the due process hearing, the County's attorney argued in support of its motion for summary judgment that the Plaintiffs had no expert witness who could testify that the IEP offered by the County would not provide a FAPE to CE.[7] In contrast, they had an expert, Dr. Freeman, who would testify that the IEP did offer a FAPE. **Hearing Transcript, at 60–63.**

Neither witness has ever, at the time of those depositions, had ever seen any document from the Buncombe County Board of Education. Nothing. Doctor Luce stated, "I'm just here to support the model. I'm here on behalf of Lovaas and I think Lovaas was appropriate for this child." Doctor Eagle stated the same thing, ["]Lovaas was appropriate for this child." I asked him, "Are you prepared to talk about whether or not Buncombe County had an appropriate program?" He answered "no" to that. So we have two expert witnesses neither of which is ready to carry forward their burden of proof in this case. Both parties agree. There's no debate over the fact that the first question before this Court is, was our program appropriate? ... [In response to the motion for summary judgment] [Petitioners] have to come forward with a forecast of evidence which will show this Court that they can do that at trial. If you read their Brief, they make the statement they shouldn't be forced to prove their case on Motion for Summary Judgment.... However,

---

7. Clearly, the County had the burden of proof at the administrative level to show that the IEP developed for CE would have provided him with a FAPE. *ES v. Independent Sch. Dist. No. 196, Rosemount–Apple Valley,* 135 F.3d 566 (8th Cir.1998); *Seattle Sch. Dist. No. 1. v. BS,* 82 F.3d 1493 (9th Cir.1996); *Brian S. v. Vance,* 86 F.Supp.2d 538 (D.Md.2000). And, the County produced the testimony of an expert on that issue. Despite the fact that the County bore that burden, it was not inappropriate for it to move for summary judgment at the administrative level. And, such a motion having been made, it was incumbent on the parents to bring forth some evidence that the IEP would not provide a FAPE. This was not done, as noted by the ALJ in his final decision, and in this action, Plaintiffs did nothing to enlarge the record or to submit additional evidence. *Tice,* 908 F.2d at 1206 n. 5 (**At the district court level, the party seeking to challenge the administrative ruling has the burden of proof.**).

what Summary Judgment does provide is that the party must come forward with a forecast of evidence and show [t]he Court that there is a factual issue—there was a factual issue at the time. Not one manufactured for Summary Judgment but a factual issue at the time that the Court should consider. They have not been able to do that. They state in their Brief that Doctor Eagle *may* come and testify about whether or not our program was appropriate. So they want to rely on ... their bare allegations and statement to [t]he Court that Doctor Eagle *may* show up.

*Id.,* at 30–32 (emphasis added).

The County's attorney also noted that [t]he Baltimore schools offered an IEP [8] [for CE prior to his relocation to North Carolina] that they said complied with IDEA and the [parents], as they had the right to do, argued it wasn't appropriate and they went to Court and had experts who said it wasn't appropriate, which they haven't provided to [t]he Court today.

*Id.,* at 90 (footnote added).

Moreover, at the hearing the Plaintiffs' attorney admitted that the issue was not the provision of a FAPE but reimbursement for the program which the parents had chosen. "All the letters [from the Plaintiffs] say we request that you fund our program. They never ask for any implement. [ME] ... said that she wanted the program with her [therapists] in it. That's what she would have accepted." *Id.,* at 89. Thus, not only did the Plaintiffs

fail to meet their burden of proving the County did not offer a FAPE, they admitted that the County's FAPE would not have been accepted.

This admission is borne out by the facts. After their relocation to North Carolina, Plaintiffs did not enroll CE in a public preschool program. In fact, the County was not contacted until six months later because his parents made a unilateral choice to provide him with Lovaas therapy rather than to take advantage of the TEACCH program offered through the public school setting. Indeed, enrollment in the TEACCH program was never an option; Plaintiffs insisted on Lovaas therapy and never sought implementation of the TEACCH program. Thus, Plaintiffs seek reimbursement for Lovaas therapy, a methodology which they unilaterally chose. "Recovering tuition [or costs] is a remedy only if the free and appropriate public education (FAPE) guarantee has been violated, exhaustive administrative remedies have been tried before placement, *and the school has been notified* .... While [the private school] may have been of great benefit to [the child], we cannot agree that a school district must reimburse a parent for unchecked educational expenses." *Thompson v. Board of Special Sch. Dist.,* 144 F.3d 574, 579 n. 3 (8th Cir.1998) (emphasis added) (citations omitted); *accord, Sandler v. Hickey,* 5 Fed.Appx. 233, 236, 2001 WL 227307 (4th Cir.2001) ("**[P]arents who enroll their children in nonpublic school without affording the local school system an**

---

8. It is also noted that this is not a "stay put" case. **20 U.S.C. § 1415(j) (requiring that during the pendency of IDEA proceedings, the child must remain in the then-current educational placement.).** The fact that an IEP had been developed for CE in Maryland had no bearing on any North Carolina public school system, including the County. *Michael C. v. Radnor Township Sch. Dist.,* 202 F.3d

642, 651 (3rd Cir.), *cert. denied,* 531 U.S. 813, 121 S.Ct. 47, 148 L.Ed.2d 17 (2000) ("**[T]he IDEA's overall scheme and the precedent interpreting that scheme leads inexorably to the conclusion that when a student moves from State A to State B, any prior IEP in effect in State A need not be treated by State B as continuing automatically in effect.**").

opportunity to provide a FAPE in a timely fashion will not be entitled to reimbursement."); *Warren G. v. Cumberland County Sch. Dist.*, 190 F.3d 80, 84 (3rd Cir.1999) ("[W]hen parents unilaterally withdraw their children from public school, absent mitigating circumstances, they are not entitled to reimbursement for private school tuition until they request review proceedings."); *Schoenfeld v. Parkway Sch. Dist.*, 138 F.3d 379, 382 (8th Cir.1998); *Lewisville Indep. Sch. Dist. v. Brooke P.*, 16 Educ. for the Handicapped Law Rep. 1313, 1315–16 (E.D.Tex.1990) (parents' failure to request due process hearing constitutes waiver of right to reimbursement for cost of extended school year services prior to initiation of due process proceedings).

> [A] parent's right to seek reimbursement for a unilateral placement of their child is available only upon a finding that, *after cooperating with the school district*, there are sufficiently serious procedural failures by the school district.... Practically speaking, a school board needs the cooperation of the parent(s) to properly evaluate a child and convene a case conference to thereby determine what level of services would address the child's disability.... [The County] had no opportunity to provide an appropriate education for [CE] in the public school as is preferred under IDEA because [his parents placed him in private therapy] *without any discussion* with [County] officials about possible accommodations to meet his current needs.... [CE's] unilateral [placement in private therapy] meant there was no opportunity to modify his IEP to meet his needs for the [1995–96] school year in public school as is preferred under IDEA and *no involvement of school officials in the private placement decision.* In these circumstances reimbursement for the expenses of his private [therapy]

is not required even if it were assumed that private placement was appropriate to meet his needs.

*Patricia P. v. Board of Educ. of Oak Park*, 203 F.3d 462, 468 (7th Cir.2000) (emphasis added) (citations omitted). Thus, no reimbursement is appropriate for the 1995–96 school year.

As to the 1996–97 school year, Plaintiffs made boilerplate allegations that the IEP developed for CE by the County would not have provided a FAPE. However, as noted, they presented no evidence in support of the claim either here or below. A FAPE is one "specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Rowley*, 458 U.S. at 188–89, 102 S.Ct. 3034. An IEP should contain (1) a statement of the student's present level of educational performance; (2) a statement of annual goals and short-term instructional objectives; (3) a statement of specific educational services to be provided to the student and (4) appropriate objective criteria, evaluation procedures and schedules for determining whether the instructional objectives are being achieved. **20 U.S.C. § 1401(a)(20).** Plaintiffs did not place a copy of the IEP in the record; therefore, any review by the undersigned is limited to the description thereof contained in the administrative record. *Dong v. Board of Educ. of Rochester Comty. Sch.*, 197 F.3d 793, 799 (6th Cir.1999) ("[I]f neither party clearly indicates its desire to present additional evidence in an IDEA case, the district court is entitled to assume that the parties intend that the case be decided on the basis of the administrative record."). That description was 25 hours of one-on-one instruction in the TEACCH classroom of no more than 12 students, 60 percent of whom would be non-disabled with specific provisions for speech and occupational therapy.

The "party challenging the terms of an IEP should bear the burden of proving that the placement was not appropriate." *Id.; accord, Barnett, supra.* Plaintiffs' complaints are unsupported allegations that (1) the evaluation procedures and schedules were inappropriate, although no explanation of in what manner was provided; (2) they did not understand where the services would be provided, despite the clear statement that CE would be enrolled in a TEACCH classroom setting; (3) they did not understand the duration of services, despite the clear statement of hours for preschool, speech and occupational therapy; and (4) the IEP did not consider the impact on CE of moving from Lovaas therapy to a TEACCH approach. These unsupported claims, especially in view of the parents' admission that they would never have implemented the offered IEP, are insufficient to carry their burden. *Brett Y.,* 1998 WL 390553, at **10–11 (quoting *Lenn v. Portland Sch. Comm.,* 998 F.2d 1083, 1086 (1st Cir.1993) **(IDEA requires "an adequate, rather than an optimal, IEP" and noting parents' agreement at IEP development meeting that the goals were appropriate.);** *Doe v. Defendant I,* 898 F.2d 1186, 1190–91 (6th Cir.1990) **(Where the information claimed to be absent from the IEP was known to all parties, technical violation was harmless.);** *JSK v. Hendry County Sch. Bd.,* 941 F.2d 1563, 1571 (11th Cir. 1991) **(Argument that the IEP failed to include teacher's daily activities and thus ambiguous, rejected.).** "[T]he purpose of the IDEA is to 'open the door of public education' to handicapped children, not to educate a handicapped child to [his] highest potential." *Patricia P.,* 203 F.3d at 467. Moreover, the parents signed the IEP reserving only the right to seek reimbursement for Lovaas therapy, proving that their dispute was one involving methodology only. *Dong,* 197 F.3d at 801; *MC,* 226 F.3d at 66 ("If the challenged IEP was adequate, the state has satisfied its obligations under the IDEA and the necessary inquiry is at an end. . . . Only if a court determines that a challenged IEP was inadequate should it proceed to the second question [of whether the private educational services were appropriate].");* Tice,* 908 F.2d at 1207 ("Rather, [courts] must defer to educators' decisions as long as an IEP provided the child 'the basic floor of opportunity that access to special education and related services provides.' ") (quoting *Rowley,* 458 U.S. at 201, 102 S.Ct. 3034)).

The undersigned finds on the record presented that the Plaintiffs have not carried their burden of proof to show that the proposed IEP would not have provided CE with a FAPE. As a result, they are not entitled to reimbursement for Lovaas therapy for either the 1995–96 or the 1996–97 school year.

## IV. ORDER

IT IS, THEREFORE, ORDERED that the Defendants' motion for summary judgment is hereby **GRANTED** and this action is dismissed by way of Judgment filed herewith.